and Internal Revenue Service. Mr. DiBruzzo for the appellants, Ms. Bradley for the outlays. Good morning. Good morning. And may it please the court, Joseph Drews on behalf of the appellant Dave Myers, I'd like to reserve two minutes for a rebuttal. Given the limited time I have here today, I'd like to focus my argument on three points. First, that this court has jurisdiction to entertain the appeal. The second is that the IRS letters are so bereft of information to not be a quote determination close quote, as that term is used in 7623B4, which today I'll just refer to as B4. And third, that B4 is not jurisdictional. Now, in respect to this court's jurisdiction, the parties agree that Myers below filed a timely post-trial motion, which he self-styled as a pro se litigant as a motion to reconsider. But regardless of whether a motion to reconsider under Tax Court Rule 161, Tax Court Rule 162, the parties prefer the proverbial reset button. And as a result, when Myers filed his notice of appeal, that notice of appeal was within the 90-day time frame contained in 7483. As a result, this court has jurisdiction. However, if this court were to disagree with the parties, if the court would disagree that Myers did file a Rule 161 motion for reconsideration instead of a 162 motion to vacate, I would submit and the parties agree that the labeling of a pro se litigant's motion does not control. One would have to delve into the actual substance of a pro se litigant's motion. And the substance of the motion was not a reconsideration in the context of a pro se litigant's motion. And that's why I would suggest that the parties would agree to the fact that Myers did not file a motion to reconsider. But if the title of the motion doesn't matter, why do the rules differentiate between 162 and 161, one of them being tolling and one restarting and one not? I don't know, Your Honor, but my initial reaction is that perhaps the framing of 161 and the framing of the language of 162, that the language might be in existence. Didn't the government supply an answer here that one deals with the opinion and one with the decision? Yes, and the decision, as the tax court term goes, is in general where the computations are. So in general you have... Usually in a tax case, you've got a decision, an opinion on resolving the case, and then a dollar amount to follow. Correct. This is peculiar because this one doesn't have that second feature. There can't be a dollar amount in a whistleblower case. So it is peculiar. But we still have an opinion. We still do have an opinion. So I don't even know if you could, in a whistleblower case, even have a motion to vacate under 162 because there is no decision with a dollar value. So I think in a whistleblower case, perhaps the 161 and 162 considerations have to merge. And I would submit that given that Myers asked for the tax court to effectively wipe out and totally switch the tax court's opinion that it actually had jurisdiction, that you could easily argue, and I think it's a fair reading of this motion, that it's actually a better style as a motion to vacate. But assuming that this court disagrees with the party, then this court would have to turn to whether 7483 is jurisdictional and I would submit that 7483 is not jurisdictional because the jurisdictional grant for this court is contained under 74882. Now, turning to my second point, the second point is that the- Wait a minute. Could you just back up on the question whether if this is not a motion to vacate and therefore it matters whether the deadline is jurisdictional because if it's not, the commission has waived and if it is, then your client is not timely appealed. And what is your argument that it is not jurisdictional? It is that the timeline under 7483 of the 90 days is separately stated from this court's jurisdiction under 7482. So now turning to- With what consequence? I mean, under various decisions of the Supreme Court, most importantly Bowles, words notice of appeal have jurisdictional consequences. A notice of appeal is mentioned here. Why is that not- Well, I think our Bowles- That was the beginning of I would submit the recent sea change in the Supreme Court case law regarding jurisdictional versus non-jurisdictional. The Supreme Court has made it clear that where the Congress has separated out in the separately stated provision the timeframe, which 7483 contains, versus the granted jurisdiction, which is contained under 7482, that at that point you have a presumption that the 90-day timeframe would be a claims processing rule and not a jurisdictional rule. Another point I would make is that under the Supreme Court's decision in Hammer, I believe it's footnote 9, talked about those typical rules for a notice of appeal being jurisdictional in nature, deal with an Article III court appealing to another Article III court, as compared to the tax court, which is a statutory Article I court. So I would submit that those considerations that animate the Supreme Court's decision in Bowles don't come into play here. What if Kinseki follows? Say again, sir? Kinseki is a later case, the most recent case. Kinseki talks about courts without this footnote limitation to Article III courts. I believe that that Article III discussion was in Hammer at footnote 9, but I believe that the Kinseki case, I believe, dealt with, I think it was Meredith Henderson that dealt with the... Pardon me, Kinseki, two days, ma'am. Okay. But the Henderson dealt with a review from the Court of Veterans' Appeals or Veterans' Affairs, which is also... The Board of Veterans' Appeals to the Veterans' Court. Yes. But now, as to my second... Which is, what did you say, an Article III court? No, which is Article I. Right. So in the Kinseki case, there's no distinction between Article I and Article III. I believe you're correct. It was dealing with an Article I court. Later, in Hammer, there's a footnote that refers to Article III courts on both ends, Appeal from and to. Yes. But it's not an issue in the case. They happen both to be Article III courts. I don't think it disturbs anything in Kinseki. Well, I would disagree. I would have to fall back onto the general concept that where Congress separates out a deadline, in this case the 90 days, from the jurisdictional grant in separately stated code sections, that such is not a clear statement of legislative intent that is jurisdictional. It falls into the general claims processing rule. Can you explain why it would matter whether it's to and from an Article III court or to and from an Article I court or from an agency to an Article I court or from an agency to an Article III court? Because Congress determines the jurisdiction of all of those entities. As a general rule, I would agree with that. But I believe there are certain Article III limitations, and that those Article III limitations, which are grounded in the Constitution, can't be tweaked by Congress, whereas Article I considerations from the tax court, which is a feature purely of statutory creation, which there is some ongoing argument as to what exactly the article, the tax court is. Is it really an Article I court? Is it an Article II? These considerations don't come to bear and are separate when you have an Article III court appeal from the district court to the court of appeals. Article III considerations that are relevant to this issue, I'm not aware. I mean, Congress under Patchak and other recent decisions has quite broad authority to define Article III court jurisdiction. Yes, as a general rule, I would agree with that. But I would have to submit there are limitations within the context of Article III itself. I mean, I thought in Bowles, actually, the more powerful driver was the history of over 100 years of treating the timing for a motion for a notice of appeal as jurisdictional. The Supreme Court in a half-dozen cases, all the circuits, the understanding was really deeply grounded. Do we have anything similar to that here? I believe so. I think, you know, going along those lines where you have tax refund jurisdiction, I want to say under 6511, I think it was at John Gravel, the Supreme Court, you know, decided the statute of limitations issue on longstanding stare decisis considerations in order to bring a refund suit. And, like, those longstanding considerations, especially not present here, given that the whistleblower jurisdiction started in 2006. And so relatively, constitutionally speaking, it's of recent vintage. Is there a general font of tax court jurisdiction over these matters? Actually, that's switching to your other issue. So on this question of our jurisdiction, I thought that your last answer was actually contrary to your interests. The question is, is there a longstanding tradition of treating appeals, notices of appeal, from the tax court as the timing of that is jurisdictional rather than as processing rule? And I would think you would have to say, no, there is no. Oh, no, there is no. Because, for example, I can think of the code section, I think it's 7433, which I discussed the Haasen case about a wrongful levy. So there are certain provisions in the Internal Revenue Code that allow for taxpayer litigation that, you know, are not jurisdictional in nature. So it's not a one-size-fits-all as to whether everything from the tax court or everything within the Internal Revenue Code is automatically a jurisdictional provision versus a claims processing rule. Mr. Gersen? Yes. I'll take you back a moment because I want to make sure that I understand not only what you're saying, but this case, which I find very difficult to keep in focus. But when I said that it seemed to me that the Article I, Article III distinction didn't matter and that under Bowles this would be a jurisdictional requirement, it would still be potentially subject to reset or tolling by the motion for reconsideration. And you opened, I thought, by saying that's what happened here. Oh, absolutely. My fallback is only if you disagree with the parties about 161 and 162, would this Court even have to reach the 7483 issue. But assuming that this Court did, that's my argument. Okay. All right. I'll give you a couple minutes to reply. Okay. Thank you for your time. Ms. Bradley? Good morning, Your Honors. Janet Bradley on behalf of the Commissioner. I'll get right to the jurisdictional matter. I think part of the confusion comes because when Rule 14 came into existence, the typical thing is the tax court would issue an opinion. There would be a little bit of time before a decision could be entered. So that's where there was a motion to reconsider the opinion. And then after that's denied, before the decision is entered, the time does not start to run. Here, the time between the opinion and the decision, I think, was two days between June 5th and June 7th. The pro se here did caption his case as a motion to reconsider. In the body of the motion, he did refer, however, to ask the Court to reconsider the decision. So he did that, I believe, in the opening paragraph. And in the conclusion, he also referred to the decision. Again, here, while labels sometimes matter because it is a pro se, the courts have treated motions to reconsider as motions to vacate, where, again, the timing here is it was timely, within 30 days from the date of the decision, and he asked the Court to reconsider the decision. And then the time started to run once that action by the tax court was taken denying his post-judgment motion. Here, the explanatory advisory notes to Rule 13, specifically in talking about the tolling and motions to vacate, they refer specifically to this Court's decision in a case by the name of Continental Oil. It's an old one, but nonetheless, the proposition there that a petition for rehearing essentially tolls the time until it's decided, so the advisory committee rules cited to that. And it also cited to another case of the Eighth Circuit called Robert Stevenson Apartment, where, again, the same principle was a motion to reconsider would toll the time for appeal to be taken. Did you say Ninth Circuit? No, that actually, Robert Stevens was Eighth Circuit. Is there any reason that any post-decisional motion should not toll the filing period? I believe that any motion that is timely filed within the 30 days of the decision, if it's categorized as a motion to reconsider or a motion to vacate, I think, especially here, liberally construing a pro se. But take away the pro se element of this. What is the difference between asking a court to reconsider and asking a court to revise? Why do you want reconsideration except to revise? Well, you know, I think it probably is a matter of semantics because I think in the typical situation, again, the tax court first issues its opinion with its findings of facts, conclusions of law. Then typically, here Mr. Myers has a claim. He's not even a taxpayer. They have 30 days to file a motion to reconsider. So, you know, a lot of times that 30-day period will come and go. There's no motion to reconsider. And then once you have that decision, which commences a time to file a timely appeal, probably any motion that reasonably can be construed to reconsider the decision, which at bottom is reconsidering the opinion, I think would be fair game to be a tolling motion for purposes of the running of the appeal period under 7483. I have a question about it. Go ahead. There's a long way of saying that any motion filed within the 30 days, regardless of how it's styled, vacate, revise, reconsider, should be treated the same. But there could be post-judgment motions which seek other sorts of, like, injunctions or whatever. I don't know. If there's no motion to reconsider the opinion, and then the decision issues, liability is no longer subject to reconsideration, only the calculation of the decision is. Correct. Which would mean revising. But in the context of a whistleblower, and I would even say in the broader context of tax court jurisdiction, a lot of times the tax court doesn't, per se, enter a document called opinion. The rules provide that they can actually jump over that step and have an order and an order of dismissal sometimes where there are findings that the court lacks jurisdiction. So, really, there wouldn't be any, per se, memorandum. But, again, that order will be construed as a decision. So, here, again, it's just a little odd with the timing, and the tax court, you know, wanted, since this area of law was kind of needing some assistance, you know, spent considerable time having a very thorough opinion regarding the area of whistleblower law. But, again, here, there would be no computation of an amount of decision, or the parties couldn't agree. It was either that, at least here, whether the court had jurisdiction or not. Remind me, did the tax court opine at all on this distinction? No. The court subsequently, after briefing was completed about two or three weeks ago, asked for supplemental briefing on the impact of the post-judgment motion. The tax court hadn't addressed that. No. The tax court didn't specifically address this in the context. The tax court did consider Mr. Meyer's motion, post-judgment motion, and whether or not that had any merit, and subsequently issued an order going through his considerations thoroughly and said there was nothing here that would have had cause to reconsider its opinion or its decision. And the government's position is, you know, the Supreme Court has said a few times in recent years, including I think most recently in Hamer v. Neighborhood Housing Services, that a statute that's jurisdictional cannot be altered by a rule. The statute reigns supreme in the context of jurisdictional timing requirement. And the government's position as to why the statutory period can be affected by Rule 13 is that the period's not affected. It's just a setting of when the period, the statutory period begins. Am I right about that? Again. The operation of Rule 13 opens the statutory period that the statute says. Again, just back up a step here. The Supreme Court has held, and it's been in the Bowles case and subsequently in the Hammer, that a statutory time period is the best intent that Congress intended for it to be jurisdictional. In the Bowles case, what happened was, and there was a long history regarding that rule and the interplay of the jurisdictional provision. There, the rule said that the statute provided that it could be extended for a period of 14 days, but the district court, for unexplained reasons, said 17 days. Could have been a typo. Who knows? But in any event, the motion wasn't filed within the prescribed 14 days. So, again, the Supreme Court went back to the statute and the time limit that was established there. And as Judge Ginsburg pointed out, the government doesn't see that there's any distinction between coming from a lower judicial body to a court of appeals, whether it's Article I or Article III. And as you pointed out, Judge Ginsburg and Shiseki, there was no difference. So we don't see that there's any difference here for jurisdictional purpose coming from the tax court to this court. And where are you on tolling? On tolling, because we take the position that 7483 is jurisdictional, and I think the courts of appeals, again, I think there is a history here of the courts of appeals considering 7483 to be jurisdictional that it can't be tolled. Again, once the decision on that post-judgment motion was issued, it wasn't the time then started again for the 90-day period, so that Mr. Myers did within that 90-day period file a timely appeal. Wait. I'm not sure I followed that last answer. Okay. If 7483 is jurisdictional, then the filing of the notice of appeal is only timely if it is somehow paused or extended by the operation of Rule 13. And your position is that it may be validly so extended. Correct. And you said something about not subject to any tolling, and that's where you lost me. So you're saying that the filing of the post-decision motion is itself? Right. So that is tolling, no? Well, I guess it's pausing. It's pausing. I guess there's been a lot of conversation. Sure. Thank you for clarifying that. Right. So just, you don't go back to day one. No, no, no, you don't. So he came in on day 70 on this period. Right. Day 70, I believe, was. So you count the pre-motion days and you add them to the post-motion? No, no, no. After the decision on the motion to vacate or reconsider is issued. Right. Then the time to appeal begins as of that date. Correct. Once that decision on his post-judgment motion was issued, denying it, then Mr. Myers had 90 days from that date to file a timely notice of appeal, which he did. So I still think, I apologize if we're talking past one another, but I still have the question about the government's position on how to reconcile the language of Bowles and of Hamer that basically says where the statute is jurisdictional, it cannot be altered by rule. And you seem to be saying, well, here's a rule, Rule 13, that is operating along with the statute, and I'm interested in the grounds for your position that that is not altering the statutory jurisdictional time for the notice of appeal per Bowles and Hamer. I'll do my best to clarify this. There has been a long history in the tax courts and the courts of appeals interpreting Rule 13's provision that a timely post-judgment motion tolls the time. So, again, we have that long history of the courts of appeals and the tax court itself understanding that that tolls the time to appeal. I think there's probably a litany of cases out there, again, where there's been some sort of a timely post-judgment motion. It has been decided, and then the time commences again. So, again, we have this just long history of judicial interpretations of that provision. So here, once that motion was denied by the tax court, Mr. Myers then did file a timely post-judgment motion. But here, just as in Henderson, is not, and unlike in Bowles, is just not itself jurisdictional. Not itself jurisdictional. I think that 7483 is a little different, again, insofar as there's been an extensive judicial history interpreting it to be jurisdictional. The courts have interpreted it that way, the tax court has interpreted it that way. This court has never interpreted it to be jurisdictional. In your Edwards v. Commissioner case, which involved your deficiency jurisprudence, I do believe in that case that there was some sort of a timely post-decision motion that I think did toll the time. But didn't characterize the underlying statutory time frame as jurisdictional. No, I guess it was just assumed to the extent the court went on to decide the merits of that case, correct. Just to briefly get to, I see my red lights on, I would just go on to state that the tax court here conducted a thorough determination that the letters that Mr. Myers admittedly received were determinations for purposes of 7423b-4. The tax court also correctly determined, since there was not direct evidence of mailing, that here, where Mr. Myers had admittedly received all of the letters, that his time commenced once he received that to go ahead and file his petition in the tax court. And lastly, I would just state that the government's position is that 7623b-4 is jurisdictional. It's the only provision in the Internal Revenue Code governing tax court jurisdiction with respect to whistleblower. And we would ask this court just to affirm the decision below, please. If we disagreed with you on that, there would be this question of whether it's subject to equitable tolling. Well, here we maintain that there is no equitable tolling as a factual matter because it's a high bar to come by to prove equitable tolling. Well, my question is, should we resolve that, or should the tax court? Good question. I would say that it's clear here, there's plenty of information in the record to show that Mr. Myers here admitted that he received letters, he didn't do much of anything, and there were no extraordinary circumstances. There was no indication that he contacted the whistleblower's office to get information. I mean, he really did nothing further. So I think here as a matter of law, given the record before it on what Mr. Myers did and did not do, it's explained in our brief that equitable tolling would not, if 7623b was decided by this court not to be jurisdictional, which we maintain it is, that there's no grounds for equitable tolling and that this court could decide that. Well, if we agreed with you on that, 7623 is dealing with the tax court's jurisdiction. Correct. So unlike our own jurisdiction, well, let me ask you, because it's not about our own jurisdiction, are we worried about steel cut here? I think not. I don't think so. So let's assume not. Okay. Then the question is whether the tax court should make a determination about its own jurisdiction, specifically this presumption issue, whether the presumption is. With respect to 7623b-4, I think the tax court did hold that the provision was jurisdictional and that it did not have jurisdiction because Mr. Myers did not file a. What I'm saying, if we disagree on that and we go to this question of whether there should be tolling, whether there should be equitable tolling in this case, could we then say, well, we don't have to answer the question about the tax court's jurisdiction. It's not like steel cut. We could just look at the question of whether, assuming there is equitable tolling, it's been overcome, and if the answer is no, as you're suggesting, or there should be none, then we could resolve that without resolving the question of the tax court's jurisdiction. Which the tax court itself could not do. Correct. Well, I think the tax court did explain the parameters for it to have jurisdiction. Again, any determination in a timely petition and held it did not have jurisdiction. And then there's the separate issue of whether the tax court also went on to hold that 7623b-4 is jurisdictional to the extent it has a clear statement of, it uses the word jurisdiction, and that provision is very similar to other jurisdictional provisions. Is there a logical reason why we couldn't say, well, we don't have to decide that on appeal? Because there's no extraordinary circumstance that stood in Mr. Meyer's way under Montgomery v. Holland. Right. But then the court would have to have, in order to get to the equitable tolling issue, I believe the first, the court first has to decide whether or not the statute 7623b-4 is jurisdictional or not. Well, that's why we were referring to would we, because we have jurisdiction over the appeal. Right. So we would not be overstepping our jurisdiction in deciding on the alternative ground that even assuming that the statute was jurisdictional and that possibly the tax court lacked jurisdiction, we don't have to get there because we think even if it exercised, even if it did have exercised it, there would be no relief for Mr. Myers. And there is a little bit of an oddity there that we could decide an issue that in the first instance the tax court could not decide without first resolving. It would have to resolve its jurisdictional question in a way that we would not have to because it's not our jurisdictional question. I think that reasonably sums it up. I'm just really trying to distinguish the 7623 from the 7483. I'm just, I'm really trying to keep the two of them separate. Again, I. It's difficult, but they are completely separate. It is difficult. Well, thank you. It is difficult, but they are completely separate. And I think, I hope we try to set that forth in our supplemental briefing. And I see my red light's been on. If there's not any further questions, we would just. Judge Ginsburg. Thank you very much. Why don't you take two minutes. Sure. Judge Ginsburg, I think you're right. This Court can say it has jurisdiction and pass on whether the tax court had jurisdiction under B-4 and remand for further consideration in the first instance by the tax court. In the alternative, I believe this Court reasonably could affirm and say that based upon the evidence and in the record, there is no grounds for equitable tolling and not remand. I think this Court. And we could do that without deciding the tax question. Without deciding B-4. What is the ground for equitable tolling? I mean, Menominee sets a high bar. And I know that there have been many different hoops you've had to jump through to get there. But it seems like at the end of the day, if you don't have that, all those hoops judge for not. And this actually leads back to my second point. If you look at Joint Appendix 126-130, the actual letters, you know, there's certain things that are just not in there. No mention of the 30 days. No mention of tax court review. And that it implies that the next step, and I'm quoting here, quote, if you have any further questions in regards to this letter, comma, please feel free to contact the Informant Claims Extension Team at 801 blah, blah, blah. Close quote. But what requires that a determination say what the appeal rights are? I mean, it certainly seems like good governmental practice. But we don't give instructions. Typically, courts don't give instructions. Thank you that you asked this question. This code section has no balance at all. All it says is any determination. It doesn't say that it has to be written. It doesn't say that it has to be a letter. I would submit that one could reasonably argue that a postcard from the IRS to a taxpayer would be sufficient. One could say that an e-mail would be sufficient. One could say that an oral statement, an IRS employee could say, the IRS has determined that you're not entitled to your whistleblower reward. That would be any determination under B-4. So I think that, yes, you know, I understand the IRS, how it conducts its business. But this statute B-4 is so bereft of information that this court is able to interpret what exactly the constitutional minimum, or maybe the statutory minimum, that will go into a determination. And none of that happened here. I would submit that, especially if 74B-4 is a hard jurisdictional deadline, I submit that it's not. But if it is, one would think that at a minimum you would need to tell the taxpayer that you've got 30 days to petition the tax court. Otherwise, you're out of luck. And, you know, in this sense, that's why these notices were so bereft of information, really not to put Mr. Myers on notice that he needs to go to the tax court within 30 days. Otherwise, you know, his case would be forever barred. Well, it seems to me that the very sort of informality that you refer to in the whistleblower program actually supports your reading of 7623B in the sense that there's a real question whether there's a right involved at all and whether the tax court has jurisdiction over any denial of it. And, therefore, when you read the parenthetical, and the tax court shall have jurisdiction with respect to such matter, it's at least reasonably understood that the such matter refers to a determination regarding an award under paragraph one, two, or three, and not really attentive to the 30-day clause. I would agree. And I would submit between my – I think I can reasonably argue, along with Amicus, that the parenthetical is subject to reasonable interpretations and reasonable people could differ. And I think that alone is – reasonable people could differ. If that's not a clear statement by Congress, that's a hard jurisdictional deadline, especially 30 days. 30 days is so quick. So, but going back to your tolling argument on the facts, what is the obstacle that stood in Mr. Myers' way? From petitioning the tax court, I would submit not letting him know the 30 days, not letting him know that the tax court would use the impossible, and then intimating at best, or explicitly stating at worst, that the next step, if there's any type of dispute, was for him to call the IRS claims examination team. Well, all you would have to do is read 7623B, and I know that people typically don't sit around reading the tax code, but here's somebody on his own seeking to pursue a claim. And again, we typically assume the public – however, fictionally, we typically assume that the public does know the law. You know, I think you're right, and I can't dispute that, but I would think that, especially in the context of B-4, between the actual code section itself, which I think is less than clear, some IRM provisions that are less than clear, the fact that, you know, this is a very nascent area of the law, that a pro se individual, you know, I could submit that a non-tax attorney could easily screw it up, let alone a pro se taxpayer. So you're saying that something that's not providing clear direction can be an obstacle that's stood in his way? Yes, especially when you couple that with the intimation that the next stage is to call the IRS examination team. But the law doesn't say anything about any obligation on the part of the IRS to provide direction, right? No, it doesn't. It doesn't say what needs to be the determination at all. It doesn't even have to say that it has to be written. It could be oral, as far as my reading of the statute, or it could be an email. And I think that's incredibly problematic. So, all things considered, I submit that this Court both has jurisdiction and this Court should determine in the first instance that the determination letters or civil correct information did not need determination letters, and the alternative, that B-4 is not jurisdictional, and I ask the Court to reverse argument for the proceedings. Thank you very much.
judges: Henderson, Pillard, Ginsburg